**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF VIRGINIA**
**LYNCHBURG DIVISION**

| | | |
|---|---|---|
| In re: WILLIAM JOSEPH BOOKER, | ) | Case No. 08-61107-LYN |
| | ) | |
| Debtor, | ) | |
| | ) | |
| WILLIAM JOSEPH BOOKER, | ) | Adv. No. 08-06092 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SALLIE MAE FUND, INC., | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |

## **MEMORANDUM**

This matter comes before the court by way of a complaint filed by William Joseph

Booker ("the Plaintiff" or "the Debtor") against the Sallie May Fund, Inc., ("the Defendant" or

1

"Sallie Mae").  In the complaint, the Plaintiff seeks a declaration that the debt(s) owed to Sallie Mae ("the Sallie Mae Debt") is dischargeable, 11 U.S.C. § 523(a)(8) notwithstanding.  The Court concludes that being required to repay the debt would constitute an undue hardship on the Plaintiff.  Judgment shall be entered in favor of the Plaintiff.

### *Jurisdiction*

This Court has jurisdiction over this matter.  28 U.S.C. § 1334(a) & 157(a).  This is a core proceeding.  28 U.S.C. § 157(b)(2)(A) & (I).   Accordingly, this court may render a final judgment.

### *Facts.*

The Debtor is 29 years old and lives with his parents who are 69 and 62 years old. Shortly after birth, the Debtor was diagnosed with cerebral palsy, a neurological condition that prevents him from using his legs and causes great discomfort.  Consequently, he has been confined to a wheelchair since entering middle school.

In 2001, the Debtor received a bachelor's degree from Harvard University.  In 2002, after a year at the University of Chicago, he began studying law at the University of Michigan.  On or after 1997, the Debtor began experiencing the symptoms of Irritable Bowl Syndrome ("IBS").[1] The condition was mild at first but became progressively worse over time.  During law school, it became so severe that he was unable to attend class and, in 2005, he dropped out of school before earning a degree.[2]

In order to pay for his tuition, the Debtor obtained student loans, six of which are now

---

[1] Transcript of trial, page 78:15-25.

[2] The Debtor also testified that he suffers from gastrointestinal reflux disease.  The Court found the Debtor to be a credible witness.

2

held by Sallie Mae. The Sallie Mae loans totaled $80,129.00 at the time that he borrowed the money. He now owes a balance of approximately $118,314.95 on the Sallie Mae loans.

On May 9, 2008, the Debtor filed the above-styled petition. On August 18, 2008, the Debtor initiated the above-styled adversary proceeding seeking to have the six Sallie Mae loans declared dischargeable.

*Discussion*

The Debtor seeks an order declaring that the Sallie Mae Debt is dischargeable in his chapter 7 case. The Debtor asserts that they are not excepted from discharge by 11 U.S.C. § 523(a)(8) which provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--
> . . .
> > (8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents;

In this case, the parties agree that the Sallie Mae Debt arises from a loan for an educational benefit guaranteed by a governmental unit. Accordingly, the burden shifts to the Debtor to demonstrate that excepting the Sallie Mae Debt from discharge will impose an undue hardship on him.

Under the undue-hardship test, a debtor must establish (1) that he or she cannot maintain a minimal standard of living for himself or herself and his or her dependents, based upon his or her current income and expenses, if he or she is required to repay the student loans; (2) that additional circumstances indicate that his or her inability to do so is likely to exist for a significant portion of

the repayment period of the student loans; and (3) that he or she has made good faith efforts to repay the loans.   See Brunner v. New York State Higher Educ. Servs. Corp., 831 F.2d 395, 396 (2nd Cir. 1987) (per curiam). (Cited with approval by the Fourth Circuit Court of Appeals in Ekenasi v. The Education Resources Institute, et al. (In re Ekenasi), 2003 WL 1879012 (4th Cir. April 16, 2003) and adopted by the Fourth Circuit Court of Appeals in Educational Credit Management Corporation v. Frushour (In re Frushour), 433 F.3d 393, 400 (4th Cir. 2005)).

The burden is on the Debtor to provide evidence supporting each element of the Brunner test before the student loan may be discharged.  See In re Faish, 72 F.3d 298 (3rd. Cir. 1995).  The Debtor must prove each element by a preponderance of the evidence. Frushour, 433 F.3d at 400. If the court finds against the Debtor on even one of the three elements, the inquiry ends and the student loan is deemed non-dischageable.  See Alderete v. Educational Credit Management Corporation ( In re Alderete), 2005 WL 1525260 (10th Cir. 2005).

*A.     The Debtor's Current Standard of Living*

Under the first prong of the Brunner test the Debtor must demonstrate "that he cannot maintain a minimal standard of living for himself and his dependents, based upon his current income and expenses, if he is required to repay the student loans".  Ekenasi 325 F.3d at 546.  The test requires the court to examine the debtor's current income and expenses and determine whether there are funds available to pay the student loans.

> That is, before receiving a discharge of student loans the debtor is required to demonstrate that, given his or her current income and expenses, the necessity of making the monthly loan payment will cause his or her standard of living to fall below a "minimal" level.

Brunner 46 B.R. at 754 (Summarizing the then-existing law with approval and incorporating it as the first prong in the test.).

Courts have looked to the Federal Poverty Guidelines to define what that "minimal" level is.

> In defining "minimal standard of living," courts often look at the poverty guidelines issued each year in the Federal Register by the United States Department of Health and Human Services. [Footnote omitted.] Although the Brunner test does not require that the debtor's income to be at or below the poverty line, a debtor whose income falls below the established poverty level presumptively meets the first prong. Faish, 72 F.3d at 306 ("The Brunner standard meets the practical needs of the debtor by not requiring that he or she live in abject poverty ... before a student loan may be discharged."); Ammirati, 187 B.R. at 907; Ekenasi, 271 B.R. at 262. See also Williams, 296 B.R. at 303; Vazquez v. United Student Aid Funds (In re Vazquez), 194 B.R. 677, 680 (Bankr.S.D.Fla.1996). The Court holds that although a debtor is not expected to live in poverty to discharge student loans, *where the debtor's income is at, near, or below the federal poverty guidelines, the "minimal standard of living" threshold, and thus the first prong of the Brunner test, is satisfied.*

Mosley v. U.S. Department of Education, et al. (In re Mosley), 330 B.R. 832, 841 (Bankr. M.D.Ga. 2005) (Emphasis added.). This Court agrees with the holding in Mosley.

The Debtor is unemployed. He scheduled total monthly gross income in the amount of $838.00 per month from social security disability benefits ("SSDI"). That amount increased to $887.00 per month before the date of trial.

The Defendant implies that the Debtor must have some other income based on the deposits in his checking account, which totaled approximately $28,000.00 in 2008 and $32,000.00 in 2007. These amounts include at least three sources of money other than the SSDI benefits, none of which may considered income. The Debtor receives occasional monetary gifts from his parents. While gifts are to be considered in the analysis, there is no indication that these gifts continue at present, nor that they will continue in the future. The Debtor also scheduled approximately $40,000.00 in credit card debt. It is clear that the Debtor supplemented his income, both during and after school, by using credit cards during the past. This resource,

however, does not constitute current income, is not now available to him, and doubtless will be unavailable to him in the future. Finally, the Debtor testified that he sells items on Ebay, from time to time. Neither gifts nor the credit card advances constitute income. The Defendant failed to prove that the Debtor's bank statements reflect income, other than the SSDI.

The Debtor's income on the date of petition was $10,056.00 per year. On the date of the trial, his annual income was $10,644.00. The Debtor's current annual income is below $10,830.00 which is the poverty threshold for a single individual living in the 48 contiguous states pursuant to the 2009 Poverty Guidelines.[3] It is concluded that the Debtor meets the first prong of the Brunner test.

Nor does the Debtor's budget indicate that he has additional income. The Debtor's budget, though unusual, is sparse. He scheduled $800.00 in monthly expenses. He scheduled the following: (1) Food at $150.00; (2) Clothing at $125.00; (3) Medical and Dental at $225.00; (4) Transportation at $100.00; (5) Recreation at $100.00; and (6) Charitable Contributions at $100.00. The Debtor testified that Medicaid does not pay for massages and chiropractic sessions, both of which are necessary to help alleviate the pain of muscle cramps and spasms.[4] While the recreation expense should not be allowed in the analysis, the Debtor's budget does not contain expenses for shelter, utilities, notions, insurance, or laundry. Even if the poverty threshold fell below the Debtor's income, the Court would conclude that paying his student loan payments would place him below a minimal standard of living.

While neither party presented evidence on whether the Debtor was eligible to use the

---

[3] Poverty Guidelines are promulgated by the Department of Health and Human Services. See Federal Register / Vol. 74, No. 14 / Friday, January 23, 2009 / Notices at page 4199 for 2009 guidelines.

[4] Transcript of trial, page 55:15-21.

6

opportunities afforded by the William D. Ford Foundation, an examination of the payments that he would be required to make under that program further supports the conclusion that the Debtor does not have income sufficient to make payments on the student loan. Payment options under the William D. Ford Foundation Program include the standard repayment plan, extended repayment plan, gradual repayment plan, and income sensitive repayment plan. Under the income sensitive repayment plan, the Debtor would be required to pay $00.00 per month at an income of $838.00 per month and would be required to pay $5.00 per month at an income of $887.00 per month.

The Debtor's income is below the poverty level. His budget is Spartan. He would not be required to make payments of more than $5.00 under the William D. Ford Foundation Program, if eligible. Given the Debtor's current income and expenses, the necessity of making the monthly loan payment will cause his standard of living to fall below the "minimal" level defined in Brunner. He has met the burden of proving that he is unable to make payments without falling below a minimal level of income.

### B. Change in Circumstances

Under the second prong of the Brunner test, the Plaintiff must demonstrate "that additional circumstances indicate that [his] inability to [repay the student loans] is likely to exist for a significant portion of the repayment period of the student loans". Ekenasi 325 F.3d at 546. In Frushour, the Court held that this second factor is a "demanding requirement" that necessitates that a "certainty of hopelessness" exists such that the debtor will not be able to repay the student loans. Frushour, 433 F.3d at 401 (Citations omitted.). A debtor might meet this prong of the Brunner test if he or she can show "illness, disability, lack of useable job skills, or the existence

of a large number of dependents." Id.  (Quoting Oyler v. Educ. Credit Mgmt Corp. (In re Oyler), 397 F.3d 382, 386 (6th Cir. 2005)).

In order to meet the second prong of the Brunner test, a debtor is required to seek a position in the field for which he or she has been trained, barring some physical or mental disability preventing him or her from doing so.  This second prong also requires that the court analyze the debtor's future income and expenses to determine whether the debtor has the ability to make changes that will increase his or her disposable income.  See United States Department of Education v. Gerhardt (In re Gerhardt), 348 F.3d 89 (5th Cir. 2003).  A debtor, then, is required to pursue not only the profession for which he or she is trained, but also any other profession that might generate income that would facilitate payment of the student loan debt.

This inquiry is really two inquiries.   First, are the Debtor's circumstances such that he be able to reduce his expenditures in the future?   As noted above, the Debtor's expenses are more than modest.  No reduction in his expenses is feasible.

Second are the Debtor's circumstances such that he has the ability to increase his income in the future by obtaining gainful employment either in the field for which he has been trained or another field?  The Debtor faces two debilitating medical conditions.  First, the Debtor suffers from cerebral palsy in both legs, and has since he was less than two years old.  Dr. Robert Elliott, the Debtor's attending family physician since 2001 testified to the following concerning Cerebral Palsy generally and how it affects the Debtor:

> [Cerebral Palsy] is a condition that affects infants a lot of times because they get oxygen deprivation at birth or somewhere around that time and it usually causes a fixed physical deficit or an inability to move a limb . . . at that time which remains static throughout life.
> . . .
> [The term static means that the] physical condition doesn't actually change.   If

8

> [the patient is] paralyzed in one limb or both limbs, they'll tend to be paralyzed in that limb or have some dysfunction of that limb going forward.
> . . .
> [Mr. Booker also suffers from] spastic muscle contractions of the limbs that are involved primarily in his lower extremity and some in his hand and we've had to have him in and out of physical therapy for rehab on those particular limbs . . .[5]

While cerebral palsy is a static condition, it is incurable and the symptoms can progress in their severity. Dr. Elliott also testified that the spastic contractions prevent the Debtor from sitting for more than forty-five minutes, after which he must lay down and rest for a lengthy period of time.[6]

The Debtor also suffers from IBS, which causes him to be incontinent in the bowels. Dr. Elliott testified that there are medications that can help some symptoms, but none that can stop the actual movement. He further testified that there are no surgical procedures and no medications that can abate the condition.[7] The Debtor testified that he is only able to keep the condition "under control" by avoiding certain foods and remaining at all times within five minutes of bathroom facilities.

The Debtor testified that this was the reason that he discontinued his study of the law. He further testified that the IBS is his "most significant problem . . . personally". He explained that he could work around the cerebral palsy, but that he could not deal with IBS. He further testified that "when I am placed under the physical stress of sitting for a long period of time, if I'm going to have an attack, there is nothing I can do to control that." Even when he was in school, the

---

[5] Transcript of trial, page 6:4-24.

[6] The effects of cerebral palsy go beyond limiting the debtor's mobility. For much of his life he has scooted about the floor pulling himself about with his elbows and knuckles, resulting in callouses on his knuckles. On one occasion he fell to the floor and fractured his kneecap. Despite surgery, the knee is still painful to some extent. The Debtor also suffers from pain in his feet caused by the formation of uric acid crystals which are caused by limited circulation, an effect of the cerebral palsy.

[7] Transcript of trial, page13:18-21.

Debtor required the use of the facilities "for long periods of time, up to six hours."

The Debtor testified how the negative synergistic effect of the cerebral palsy and the IBS requires him to lie down after about forty-five minutes at the computer:

> If I sit at the computer for longer than an hour, maybe even forty-five minutes, the arthritic joint pain that I have in my knees and my feet, the spasms would start and aggravate those pains and that pain in turn can aggravate my IBS so the easiest way to stop the cycle of pain is just to lay down.[8]

and

> . . . One of my great joys in life is just being to able to [lie] down and be pain free. I really, really enjoyed laying down because it's the only time in my life something in my body is not hurting so I'll spend time in bed reading books.[9]

And the Debtor has not driven an automobile since 1997. Despite his intelligence and his academic accomplishments, the Debtor's prospects for employment may certainly be described as hopeless. The Plaintiff has met his burden of proof on the second prong of the Brunner test.

*C. Good Faith and The Plaintiff's Repayment Efforts.*

The third prong of the Brunner test requires the Plaintiff to demonstrate that he has made good faith efforts to repay the loans. In this case, the Plaintiff has made only minimal payments toward the Sallie Mae Debt. So the threshold issue is whether this necessarily precludes the Plaintiff from demonstrating good faith. It does not. The Plaintiff's efforts to repay his student loans must be considered in light of his circumstances during the payment period. Under certain circumstances, a debtor may demonstrate good faith by facts other than payments to his or her creditors.

The Debtor testified that immediately upon leaving law school, he contacted Sallie Mae

---

[8] Transcript of trial, page 31:20-25.

[9] Transcript of trial, page 32:10-14.

and asked if a medical deferment might be available. The contact for Sallie Mae recommended a non-medical deferment based on the fact that he was unemployed. The person further recommended that he delay seeking a deferment based on his medical condition until necessary. The Debtor did as suggested, hoping that the severity of his medical conditions would abate. This continued for a period of two years during which the contacts at Sallie Mae avoided explaining that a medical deferment was not available.[10] Approximately one year later the Debtor filed the above-styled petition.

During the three years between law school and filing his petition in bankruptcy, the Debtor made minimal payments totaling approximately $1,000.00. He did, however, stay in contact with Sallie Mae and attempt to fashion a deferment that was reflective of the realities of his medical condition. Sallie Mae, rather than discussing the issues raised by the Debtor, suggested that he seek a deferment because he was unemployed. Under the circumstances, the Court concludes that the Plaintiff has met the burden of proof, by a preponderance of the evidence, on the third prong of the Brunner test.

*Conclusion*

A debtor's burden of proof under 11 U.S.C. § 523(a)(8) and the Brunner test is very difficult to meet. Because of his medical difficulties, which have continued, and will continue, to deteriorate, it would be an undue hardship on the Debtor to not discharge the debts owed to Sallie Mae.

An appropriate judgment shall issue.

Upon entry of this Memorandum the Clerk shall forward copies Steven E. Dunn, Esq.,

---

[10] Transcript of trial, pages 48:11 to 50:8.

counsel for the Defendant, and Linda Willis, Esq., counsel for the Plaintiff.

Entered on this  6th  day of July, 2009.

_____
William E. Anderson
United States Bankruptcy Judge